# JOHN B. TUMMINELLO *v.* STATE
# OF MARYLAND

[No. 340, September Term, 1968.]

*Decided August 5, 1969.*

The cause was argued before MURPHY, C.J., and MORTON, ORTH, and THOMPSON, JJ.

*Russell J. White* for appellant.

*Thomas N. Biddison, Jr., Assistant Attorney General,*

with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *John H. Lewin, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

John B. Tumminello, the appellant, was convicted of false pretenses in a jury trial in the Criminal Court of Baltimore and was sentenced to a term of three years.

There was evidence from which the jury could have found that:

On May 4, 1967, one Robert A. Sewell made a complaint to the State's Attorney of Baltimore City that on December 9, 1966, he had been convicted of assault with intent to murder and was sentenced to four years in the House of Correction; that after he began serving his sentence, he was visited by John B. Tumminello, the appellant, who told him that for $2,000 or some other sum of money, he could "spring" him from the Maryland House of Correction and that $1,000 would be paid to the judge, $500 to the State's Attorney and $500 retained for his services. A portion of the money was paid to Tumminello.

Through the efforts of Sewell's counsel and a priest, Sewell's sentence was suspended by Judge James K. Cullen. At the time neither Judge Cullen nor the State's Attorney was aware of Tumminello's conversation with Sewell, and, of course, neither of them had received any of the money. Tumminello continued to demand money from Sewell after he was released. On May 23, 1967, the State's Attorney, under Md. Code, Art. 27, Sec. 125 (a) obtained an order from Judge J. Gilbert Prendergast to use an electronic device to overhear and record a conversation between Sewell and Tumminello. The order was based upon an affidavit by Sewell. At the same time an arrest warrant and search and seizure warrant were also issued.

At the direction of the State's Attorney, Sewell then

arranged to meet Tumminello in his office for the purpose of paying him additional money. Sewell was supplied with $150 marked money which he took to Tumminello's office, with a hidden microphone which was to transmit the conversation to a recording device set up in an automobile near the office. Sewell entered the office, paid $100 of the money to Tumminello and had a conversation which was recorded on a tape, but a part of it was garbled. When Sewell left the premises, the police entered and arrested Tumminello and recovered the money. The portion of the conversation which came through clearly on the tape concerned Sewell's claim that his attorney was demanding more money, and was threatening to have the suspension of his sentence revoked if he was not paid; and Tumminello's lengthy advice that Sewell did not owe his lawyer any more money as he, Tumminello, was reponsible for the change of sentence. A stenographer's transcript of the clear portion of the tape was admitted in evidence.

Tumminello testified claiming that all of his activities were those of a professional bail bondsman, and that during the course of these activities he discovered the sentence would be suspended if he could obtain an appropriate letter from the priest; that he obtained such a letter and that Sewell was so grateful he voluntarily allowed him to keep the money which had been advanced for the proposed bail bond and, in addition, paid him other monies. Tumminello's testimony was not as clear as here recited, but it appears this would have been the effect of it if he had been permitted to detail certain conversations hereinafter discussed.

Tumminello claims the trial judge abused his discretion when he sustained the State's objections to Tumminello quoting pertinent conversations with the clerk of court, in which he obtained the information as to the suspension of the sentence, and one conversation with Sewell in which Sewell quoted his attorney. The objections were sustained on the reasoning that such conversations were not admissible unless counsel assured the court that

he was going to call the clerk of court and the attorney as witnesses. We know of no authority that would exclude these conversations, which go to the heart of the case, for such a reason. The State attempts to justify the rule on the basis of *Johnson v. State,* 237 Md. 283, 206 A. 2d 138, which held that hearsay testimony as to out-of-court identifications are not admissible unless the declarant is available for cross-examination. Examination of the authorities collected therein, as well as those collected by this Court in a similar ruling in *Howard v. State,* 4 Md. App. 74, 241 A. 2d 192, shows that such testimony is admitted because the identification under such time and places is frequently, if not always, more reliable than in-court identifications where the person accused is usually apparent to all present. The rule requiring the availability of the declarant in such cases for cross-examination was fashioned to fully protect the rights of the accused, but the rule is limited to that particular type of situation and cannot be used to make other types of hearsay evidence admissible, if not otherwise admissible, nor can the failure to have the declarant available preclude the testimony as to conversations which are otherwise admissible. See *Hall v. State,* 5 Md. App. 599, 607, 249 A. 2d 217. We think all of these excluded conversations were admissible under the familiar rule that they were offered for the purpose of establishing motive, intent, and to explain subsequent actions. In 6 Wigmore, *Evidence,* § 1789, *Friend v. Hamill,* 34 Md. 298, 308 is quoted as follows:

> "Where the question is, whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence and not mere hearsay. . . ."

And, thus, under Professor Wigmore's theory, such conversations are not hearsay at all but verbal acts. To the same effect see McCormick, *Evidence,* Ch. 25, § 228, p. 464. Other writers would call such evidence admissible

as part of the *res gestae*. See *Van v. State*, 1 Md. App. 347, 230 A. 2d 109 and *Hall v. State, supra*. In the latter case, we referred to *Robinson v. State*, 57 Md. 14, wherein the Court of Appeals found reversible error because of the failure of the trial judge to admit evidence that:

> "On a charge of forcibly abducting four children of one James McGee, the accused proffered a witness who stated that when the accused and Mrs. McGee came to her house to spend the night she told the witness, out of the presence of the accused, that she had made up her mind not to live with her husband any longer and had left home and taken the children with her and had gotten the accused to drive the wagon. The Court reversed because of the refusal of the trial court to admit that testimony and quoted with approval 1 Taylor on *Evidence* § 521 as follows:
>
>> " 'Certain other declarations and acts are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation.
>>
>> " 'The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others, and, each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known, in order to a right understanding of its nature.' "

In the same case, *Hall v. State, supra,* we quoted the Court of Appeals in *McBriety v. Phillips,* 180 Md. 569, 26 A. 2d 404 as follows:

> " 'Under the rule of res gestae, conversations of parties in the course of a transaction are ad-

missible when the words are spontaneous and so closely related to the principal transaction as to explain its character. 1 Jones on Evidence, § 358; 6 Wigmore on Evidence, § 1776; 20 Am. Jur., Evidence, §§ 662, 680. Such utterances, irrespective of their trustworthiness as assertions, are received as verbal parts of the entire act. In upholding this rule Justice Swayne said: "In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both; but there is no ground of objection to one that does not exist equally as to the other. * * * The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results." *Travellers' Insurance Co. v. Mosley,* 8 Wall. 397, 408, 19 L. Ed. 437, 441.'"

The State contends that because the court permitted testimony as to these conversations to come out on cross-examination, the error was harmless.[1] While ordinarily this might be true, *Barger v. State,* 2 Md. App. 565, 235 A. 2d 751, we do not think the error was harmless in the case at bar because all of the conversations we have referred to were not presented on cross-examination, and, secondly, since the answers to these questions went to the core of Tumminello's defense, we think it left his testimony fragmentary and distorted, and destroyed the naturalness which it otherwise may have had. The seriousness of the error is apparent when it is remembered that one of the conversations, which was not admitted, was Tumminello's conversation with Sewell concerning a

---

1. The trial judge admitted some of the testimony on the State's assurances that it would call the court clerk as a witness, but the clerk did not appear as a witness.

conversation Sewell had had with his attorney, and this was also the principal subject matter of the inculpatory conversation which came through ungarbled on the tape.

Tumminello also alleges the trial judge committed error in several other respects. An examination of the contentions convinces us that, with one exception, it is unlikely that these questions would be presented in the same manner on retrial of the case, and our discussion of them would be of little, if any, assistance at the retrial. We now turn to a consideration of the exception, which is whether or not the tape of the conversation between Sewell and Tumminello should have been suppressed.

Tumminello contends the Maryland statute authorizing the recording of certain private conversations does not meet the test of such a statute as set down in *Berger v. New York,* 388 U. S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040; and the trial judge committed error when he failed to suppress the conversations so recorded, or at least the tape thereof. The trial judge found, and we agree, the factual situation in the present case was so unsimilar to *Berger, supra* that he need not consider the constitutionality of the statute. He relied on *Osborn v. United States,* 385 U. S. 323, 87 S. Ct. 429, 17 L.Ed.2d 394 where a warrant was issued in the absence of any statute and the recorded conversations were not suppressed. In arriving at his decision, the trial judge carefully analyzed the facts concerning the warrant and found them similar to *Osborn, supra.* He said:

> "An examination of the application and affidavit submitted by Mr. Moylan [the State's Attorney] and buttressed by the affidavit of Sewell to Judge Prendergast shows probable cause for the issuance of a Court order similar to a search warrant authorizing the invasion of privacy, provided that the order would be properly limited. An examination of the order signed by Judge Prendergast also shows that it was care-

fully drawn and limited to a conversation that was expected to take place during the week of May 21, 1967 between Tumminello and Sewell in or about Tumminello's office at 216 East Lexington Street, 'relating to the solicitation, enticing, inducing and counselling of the said Robert A. Sewell by the said John Tumminello to turn over to the said John Tumminello the sum of Twenty-Five Hundred Dollars ($2,500.00), which has been solicited by the said John Tumminello from the said Robert A. Sewell to have a judge of the Supreme Bench of Baltimore suspend the four-year sentence imposed on Robert A. Sewell and thus to "spring" the said Robert A. Sewell from the Maryland House of Correction.'

"The order, in an effort to comply with the technical language of the statute, contains a formal paragraph toward the end, 'This Order shall be effective for a period of thirty (30) days from the date hereof.' However, it is clear from the body of the order and the affidavit that it was expected and intended that the order would be executed within the next three or four days. The order referred to the fact that it was expected the crime would be committed in Tumminello's office during the week of May 21, 1967. The order was not issued until late in the afternoon of May 23, 1967, so there only remained four days in the week of May 21, 1967. This is further borne out by the fact that the order was executed the very next day, on May 24, 1967. Considering these facts, it is clear to the Court that the reference to thirty days is surplusage, whether one regards the statute as constitutional or not, and that the only reason for including the words in the order was in an effort to comply with the technical language of the statute limiting the period for which any order could be issued and requiring further applica-

tion and showing of probable cause after the expiration of such order."

The Supreme Court in *Berger, supra* analyzed *Osborn, supra* as follows: 388 U. S. 41, 56, 87 S. Ct. 1873, 1882.

"There, two judges acting jointly authorized the installation of a device on the person of a prospective witness to record conversations between him and an attorney for a defendant then on trial in the United States District Court. The judicial authorization was based on an affidavit of the witness setting out in detail previous conversations between the witness and the attorney concerning the bribery of jurors in the case. The recording device was, as the Court said, authorized 'under the most precise and discriminate circumstances, circumstances which fully met the "requirement of particularity" ' of the Fourth Amendment. The Court was asked to exclude the evidence of the recording of the conversations seized pursuant to the order on constitutional grounds, *Weeks v. United States, supra,* or in the exercise of supervisory power, *McNabb v. United States,* 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819 (1943). The Court refused to do so finding that the recording, although an invasion of the privacy protected by the Fourth Amendment, was admissible because of the authorization of the judges, based upon 'a detailed factual affidavit alleging the commission of a specific criminal offense directly or immediately affecting the administration of justice * * * for the narrow and particularized purpose of ascertaining the truth of the affidavit's allegations.' At 330, 87 S. Ct. at 433. The invasion was lawful because there was sufficient proof to obtain a search warrant to make the search for the limited purpose outlined in the order of the judges. Through these 'precise and

discriminate' procedures the order authorizing the use of the electronic device afforded similar protections to those that are present in the use of conventional warrants authorizing the seizure of tangible evidence. Among other safeguards, the order described the type of conversation sought with particularity, thus indicating the specific objective of the Government in entering the constitutionally protected area and the limitations placed upon the officer executing the warrant. Under it the officer could not search unauthorized areas; likewise, once the property sought, and for which the order was issued, was found the officer could not use the order as a passkey to further search. In addition, the order authorized one limited intrusion rather than a series or a continuous surveillance. And, we note that a new order was issued when the officer sought to resume the search and probable cause was shown for the succeeding one. Moreover, the order was executed by the officer with dispatch, not over a prolonged and extended period. In this manner no greater invasion of privacy was permitted than was necessary under the circumstances. Finally the officer was required to and did make a return on the order showing how it was executed and what was seized. Through these strict precautions the danger of an unlawful search and seizure was minimized."

In applying these specific requirements in *Berger, supra,* the Court pointed out first, there was no requirement that any particular crime had been or was being committed, nor was the conversation particularly described; secondly, the eavesdropping was authorized over a two month period and would cover all conversations occurring within the office during that period no matter who was present; third, there was no termination date on the eavesdrop once the conversation sought was ob-

tained; and finally, there was no showing of exigent circumstances and no return was required. We think the case at bar would meet these guide lines. An analysis of what occurred here shows (1) that a particular offense was being committed, and that the recording of a specific conversation was described; (2) the recital of thirty days was surplusage because the main part of the warrant directed that one conversation occurring during the week of May 21 was to be recorded, and the warrant was, in fact, served within 24 hours; (3) by its terms the warrant expired when the one conversation was seized; and (4) was issued only upon a showing of exigent circumstances as to why the warrant was required. Although the order did not require a return on the warrant we do not consider this omission fatal. We note that the integrity of the Court was involved in the proceeding and this factor was particularly emphasized in *Osborn, supra.* Although the Court in *Berger, supra,* mentioned incidentally the absence of a return and again mentioned it in *Katz v. United States,* 389 U. S. 347, 88 S. Ct. 507, 19 L.Ed.2d 576, on the facts of our case, we do not see how a return showing merely that such conversation had occurred would have particularly protected the rights of the accused.

In relying on *Osborn v. United States, supra* to support our holding, we do not overlook the similarity of these facts to those of *Lopez v. United States,* 373 U. S. 427, 83 S. Ct. 1381, 10 L.Ed.2d 462, which rested strongly on the fact that the recording occurred without trespass. Although this doctrine has been undermined by *Katz, supra,* the latter case is applicable only to electronic surveillance conducted after December 18, 1967, *Desist v. United States,* 394 U. S. 244, 89 S. Ct. 1030, 22 L.Ed.2d 248 and *Kaiser v. New York,* 394 U. S. 280, 89 S. Ct. 1044, 22 L.Ed.2d 274.

> *Judgment reversed and case remanded for a new trial not inconsistent with this opinion.*