Thomas James REDDY et al., Petitioners,

v.

Frank SNEPP, Judge, Superior Court of
Mecklenburg County et al.,
Respondents.

No. C–C–73–9.

United States District Court,
W. D. North Carolina,
Charlotte Division.

March 6, 1973.

James E. Ferguson, II, Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., for petitioners.

Robert Morgan, Atty..Gen., and Richard N. League, Asst. Atty. Gen., North Carolina Department of Justice, Raleigh, N. C., for respondents.

## OPINION AND ORDER

McMILLAN, District Judge.

Petitioners Reddy, Grant and Parker were convicted by a jury, in Mecklenburg County, North Carolina, Superior Court, of the unlawful burning of a barn and fifteen horses in violation of North Carolina General Statutes, Chapter 14, Section 62. They ask this court, via habeas corpus, for relief from what they say are excessively high appeal bonds.

The burning occurred in 1968.

Petitioners were not accused of the crime until 1972.

Before trial, petitioners were allowed to be at liberty under signed bonds of $1,000 each for Reddy and Grant, and $500 for Parker. They reported for and attended the trial without incident.

Upon return of the verdict on July 15, 1972, Judge Frank W. Snepp, presiding, sentenced petitioners to prison terms of twenty years for Reddy, twenty-five years for Grant and ten years for Parker. Each gave notice of appeal, and appeal bond was set for each at $50,000.

Petitioners were ordered into immediate custody. Because of delays in getting a transcript of the evidence, the appeals have not yet been heard at any level.

Petitioners have not been able to make the required bonds and have remained in jail ever since the trial.

Petitioners sought reduction of their $50,000 bonds in the North Carolina Court of Appeals, which directed the trial judge to conduct a hearing, make findings and reconsider the bonds.

Judge Snepp conducted a hearing and on August 8, 1972, entered an order pursuant to the ruling of the Court of Appeals. He found, based upon testimony at the trial and at the bond hearing, (1) that Grant and Reddy pose a substantial danger to the community and that Parker poses a lesser danger, and (2) that there is a substantial possibility that the petitioners if at liberty pending the determination of the appeal will flee the jurisdiction * * *. He ordered bond continued in the amount of $50,000 for Grant and Reddy. As an alternative, he ordered that petitioners might be released upon a secured bond for Grant and Reddy of $35,000, plus a personal recognizance containing various conditions, including conditions that each petitioner not leave the county, observe a 9:00 p. m. curfew, avoid communication with the other petitioners, keep the court advised of his whereabouts, and execute a waiver of extradition and consent that "upon any infraction of these restrictions being reported to this court, capias immediately issue without notice * * *."

Parker's bond was reduced to $25,000 with the alternative of a $15,000 bond coupled with the same conditions required of Grant and Reddy.

Petitioners sought certiorari in the North Carolina Supreme Court. The petition was denied on January 3, 1973, and this action was filed on January 12, 1973. An evidentiary hearing was conducted on February 5, 1973.

Before the February 5, 1973 hearing, Mr. Robert Max Blackburn, the Clerk of Superior Court, who has the duty of passing on bail bonds, had indicated that he would not accept a property bond which was signed by several different sureties unless each one of the sureties was worth the entire amount of the penalty of the bond. At the hearing, however, Mr. Blackburn testified that after taking counsel he is now willing to accept a property bond signed by several

bondsmen if the aggregate of their financial capacity after proper checking of the titles to the land or other property involved exceeds the penalty of the bond. However, he said that he preferred one bondsman who could stand good for the entire amount. He also indicated that since some unpleasant experiences had arisen involving two former bondsmen, now deceased, he was not currently accepting bonds from any individual in amounts exceeding $5,000. There are thus some major problems in the way of petitioners' obtaining bonds, even under the revised rules described by the Clerk of Court.

Although the petitioners were tried together, and although they join in this petition, the court is of the opinion that each petitioner is an individual and that the question of his right to relief should be treated as an individual proposition rather than as part of a "situation."

█ James Earl Grant, Jr. in May of 1972 had been tried in the United States District Court for the Eastern District of North Carolina, Raleigh, North Carolina, and had been convicted of conspiring to help and providing help in enabling two individuals named Washington and Hood (the chief prosecution witnesses in the present case) to leave the jurisdiction and go to Canada to avoid prosecution on an unrelated charge. He is unmarried and has lived only a few years in Charlotte. The trial judge in view of these facts could reasonably have concluded as to Grant that he was likely to leave the jurisdiction if set free on appeal bond, especially in view of the extremely heavy sentence (twenty-five years) imposed for the crime for which he was convicted.

No relief will be ordered in the case of Grant.

Washington and Hood were the two principal witnesses against Reddy, Grant and Parker; they and their families were supported in beach cottages at the expense of the prosecution for several months pending the trial; they testified that they took part in the barn-burning with Reddy, Grant and Parker; they were given amnesty in return for their testimony against Reddy, Grant and Parker, and were not prosecuted for the barn-burnings; they now, though charged with crimes such as robbery and murder, are at large on bonds far less than those required of Reddy, Grant and Parker.

T. J. Reddy is twenty-six, married, and just short of obtaining his AB degree from the University of North Carolina at Charlotte. He has lived in this community since 1964. His wife is a Charlotte legal secretary. He owns no real estate. At the time of the trial he was an employee of the CHARLOTTE OBSERVER, and had been active in urban community center work. He was not involved in helping Washington and Hood evade trial in the United States District Court for the Eastern District of North Carolina. Neither was Parker. Reddy has no record of violence and no prior criminal record.

Petitioner Parker is twenty-four, unmarried, lives with his mother and attended the University of North Carolina at Charlotte for three and one-half years. He was employed by the Mecklenburg County Mental Health Department. He has had one conviction for possession of heroin, for which he served a year's active sentence and received a three-year suspended sentence.

Reddy and Parker raise several objections to their bonds:

█ 1. That the special conditions attached to the alternate lower bond are unconstitutional. The conditions do not appear unconstitutional to this court.

2. That the Clerk of Superior Court unwarrantedly added extra burdens to the already heavy bonds by refusing to allow the bonds to be signed by several people whose aggregate assets might equal the total penalty. Mr. Blackburn's willingness, announced at the hearing in this court, to accept a bond signed by a group of people and secured by all their assets, appears to have cured that problem.

3. That the amount of the bonds is so high as to constitute excessive bail under the Constitution. There is no right under the Constitution to have bond pending appeal, either in state or federal court. However, North Carolina General Statutes § 15–183 does provide that pending appeal from a non-capital conviction the court "shall allow such person to give bail pending appeal." The amount of bail is essentially a discretionary matter. Petitioners contend the bail itself was so high that in fact it was a denial of bail. They invite the court to compare the treatment of Reddy, for example, who pleaded not guilty and testified in his own defense supported by character witnesses, with the treatment afforded Hood and Washington. Both Hood and Washington are charged with crimes of violence (Hood with murder), yet Hood has been at large on $20,000 recognizance and has been given amnesty on the barn-burning charge along with Washington. Although the bonds and sentences are quite high when measured against the gravity of the charges, I can not say that they are constitutionally beyond the pale nor that the amounts of the bonds are so high as to constitute a denial of bail.

4. That the court's determination on a vital matter (likelihood that petitioners would flee the jurisdiction) was based on impermissible evidence.

A court setting bail must consider, among other proper factors, whether an applicant for appeal bond is likely to stick around and be on hand to serve his sentence; Judge Snepp did consider this question. His finding of fact number 15 read as follows:

"The day after the trial of the movants a meeting of sympathizers of the movants was held at 225 South Caswell Street, Charlotte, N. C. At this meeting there was discussed the possibility of raising money to have the movants released on bond, and also there was discussed the possibility of getting them out of the United States."

The Court's second of two conclusions was as follows:

"Based upon the evidence heard at the trial and this hearing, the Court concludes that there is a substantial possibility that the movants, if at liberty pending the determination of their appeal, will flee the jurisdiction of this court and possibly even attempt to reach some foreign country."

The evidence on likelihood of flight from the jurisdiction was strictly hearsay testimony by Lt. Europa of the Charlotte Police Department that:

"A. The only thing that I have heard most recently with regard to the particular incident was on July 17, I was told by an individual while standing outside of this very courthouse when we had the bomb scare, that he had been in attendance at the fund raising meeting or a gathering to raise funds for the three defendants, the meeting was allegedly held at 225 South Caswell. According to the individual relating the information to me, it was the intention of these people raising the funds for Grant, Reddy and Parker to raise the minimum requirement, minimum money required, to get them out on bond; hopefully, Reddy, their primary interest was Reddy, then Grant, and then Parker, hoping to get them out on bond and hopefully out of the country. I have no way of confirming this, other than what the individual told me.

"MR. FERGUSON: OBJECTION "EXCEPTION NO. 40

"This individual has given me reliable information in the past. This individual has given me information which proved to be truthful in the past. Not only to me, but to other agencies."

Petitioners objected to this use *as evidence* against them of these vague statements by the "reliable informer" about the "intention" of the people (not the petitioners) at the gathering. The objection was overruled. Petitioners sought to ask Mr. Europa for the

name of the informant and the Court refused to require him to answer. The Court refused to allow petitioners even to inquire about other occasions when the informant had given reliable information, and the Court left it up to the officer to answer or to refuse to answer, and sustained the officer's refusal to answer. All efforts to inquire into the identity and information sources of the confidential informant were refused by the trial judge.

Judge Snepp indicated (page 119 of the record on appeal) that other than the testimony of this witness,

"I do not have any other information concerning these defendants as to their leaving the jurisdiction."

■ Bonds are required for one reason more important than all other reasons—to assure, or at least make it highly likely, that the accused or convicted defendant will show up for trial or service of sentence.

■ In deciding this most important question—whether Reddy and Parker were likely to flee the jurisdiction—on the basis of nothing but the hearsay, unchecked testimony of the police officer concerning what he was told by an unidentified, unsworn, confidential source, the trial judge inadvertently misapplied a valid principle. Tips from anonymous informants have a recognized place in law enforcement; subject to rather stringent safeguards they can be used to justify warrants, searches and seizures which might otherwise be unlawful. See Aquilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 27 L.Ed.2d 637 (1969) and cases cited.

■ The use of such information, however, is allowed only to justify an arrest, a search or a seizure *which leads to discovery of otherwise competent evidence.*

The anonymous, unsworn hearsay is not itself allowed to be used as direct evidence against the criminal defendant.

Unless competent testimony is introduced at a trial covering the facts developed through the anonymous informant, the information is pure hearsay and may not be considered against a defendant.

Fundamental fairness requires application of the same rule here.

Petitioners Reddy and Parker have been in jail since July 15, 1972, because of the size of the bond; and the size of the bond is obviously affected by this anonymous hearsay *which is the only information the Court said he had* on the likelihood that petitioners would flee the jurisdiction.

■ Denial of liberty based upon incompetent and unchallengeable evidence of a nameless, faceless, voiceless, anonymous, unsworn informer is a denial of due process, regardless of whether it occurs in the course of a bond hearing or in the course of a trial on the question of guilt or innocence. The effect on freedom is the same; the jail is the same; and the loss of liberty is the same.

The bond should be re-examined and the likelihood that petitioners Reddy and Parker will flee the jurisdiction should be determined under competent rather than incompetent testimony.

It is therefore ordered:

1. That the petition of James Earl Grant is hereby denied.

2. That the trial judge hold another hearing and reconsider the bonds of petitioners Reddy and Parker, on or before March 19, 1973, with particular reference to the likelihood that petitioners will flee the jurisdiction. At this hearing no testimony of informers or other hearsay testimony should be considered unless the names of informers are disclosed and petitioners are given full opportunity to cross-examine the informers and, if they truthfully can, to rebut their testimony and to offer evidence on the subjects covered by the informants' testimony. The amount of the bond fixed pursuant to facts developed in

such hearing will continue to be within the discretion of the trial court.

3. Except as herein expressly allowed, all other claims for relief are denied.