## WILLIAM KING DENNETT *v.* STATE OF MARYLAND

[No. 125, September Term, 1973.]

*Decided November 23, 1973.*

The cause was argued before THOMPSON, GILBERT and MOORE, JJ.

*Bruce P. Sherman* for appellant.

*George A. Eichhorn, III, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County*, and *Darrel Longest, Assistant State's Attorney for Montgomery County*, on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On March 5, 1973, William King Dennett, the appellant, made a motion to dismiss an indictment against him upon grounds he was not being tried within the 180 day period prescribed in the Interstate Agreement on Detainers Act, Md. Code, Art. 27, § 616D (a). Judge Joseph M. Mathias denied the motion and commenced trial immediately. The jury found appellant guilty of taking money under false pretenses. Judge Mathias imposed a five (5) year sentence to run consecutive to sentences previously imposed in foreign jurisdictions.

On appeal he raises these questions:

1. Whether or not the trial court committed error in ruling a reasonable and necessary extension was granted pursuant to Art. 27, § 616D of the Interstate Agreement on Detainers Act?
2. Whether or not the evidence was sufficient to support the conviction?
3. Whether or not the trial court erred in admitting into evidence the contents of several telephone conversations?

Appellant, while incarcerated in the United States Penitentiary in Lewisburg, Pennsylvania, sent in proper form a request for final disposition of the instant charges then pending against him in Montgomery County, Md. pursuant to the Interstate Agreement on Detainers Act, Art. 27, §§ 616A — 616R. This notice was received on August 14, 1972, by the State's Attorney for Montgomery County and by the Circuit Court for Montgomery County thus establishing February 10, 1973, to be the final statutory date for trial, unless there was a proper extension under Md. Code, Art. 27, § 616D (a) which provides in part:

". . . for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Arraignment was originally set for December 15, 1972, but the paperwork involved in detainer actions is so involved that before it could be completed the arraignment date passed.[1] On February 6, 1973, four (4) days prior to expiration of the statutory period, the appellant was presented for arraignment before Judge Plummer M. Shearin, in the Circuit Court for Montgomery County. At the arraignment, the appellant moved for a speedy trial and for a trial by jury. Judge Shearin granted the motions and, in order to permit counsel to prepare and to permit defense counsel to conduct informal discovery, as he requested, set trial for March 5, 1973, a date twenty three (23) days beyond the statutory period.

On February 14, 1973, appellant filed a motion to dismiss the indictment with prejudice, under the Act, § 616F (c). He asserted the statutory date had passed and that trial could not be held to meet the statutory prescription of § 616D (a).

---

1. The routing typifies the convoluted procedure resorted to by Federal and State officials in the instant case. The Interstate Detainer form was sent by the Maryland States Attorney to the Maryland Attorney General. From there, it was sent to the Pennsylvania Attorney General, who finally sent it to the warden in the prison where the subject was incarcerated pursuant to conviction.

On March 5, 1973, the motion was renewed and denied by Judge Mathias. Immediately thereafter, trial commenced.

The State produced as its first witness, Mr. Hildebrand, the owner of a beauty shop, who testified that on January 7, 1972, he received a phone call from an unknown person who identified himself as "Roger" from United Parcel Service. Roger worked the flim-flam by telling the witness that a relative had so many televisions in stock that he could let them go at a very cheap price, e.g., $150 for a 23 inch color console, and that Hildebrand would get a free television for procuring subscribers.[2] The witness told his employees and customers of the conversation. His salesman, Mr. Clarke, took the phone to talk to Roger. The television purchase scheme was repeated to Clarke, who from then on conducted the collection of money, which amounted to over $5,000 from 30 to 40 people.

Clarke, after a mixup that night, talked to Roger by phone the next day, Saturday. Clarke testified about the conversation: "I was supposed to meet a man named Walter in Wheaton Plaza and he [Roger] did not give me too many details over the telephone. He said Walter would take care of it. He said, 'You do not have to worry about anything.' " The witness described his car so that Walter could spot him at the Wheaton Shopping Center. Later that day, Clarke parked in Wheaton Plaza and, as prearranged, was approached by Walter, whom the witness then identified to be the appellant on trial. The witness testified that the appellant wore a Montgomery Ward ID tag.

The witness and the appellant entered the Hot Shoppe cafeteria, wherein the appellant showed the witness brochures and catalogues of televisions containing serial numbers identical to those detailed by Roger over the phone. The witness testified that the appellant then described the operation, stating his brother-in-law was working for the distribution part of the RCA Victor plant, which

---

2. Hildebrand's testimony indicated that he possessed the archetypal mentality for such flim-flam: "Q. Did you think it was a good deal? A. I thought it was fabulous. Q. Why did you think it was a fabulous deal? A. Because I was getting something for nothing just like everybody else."

manufacturer makes Airline television sets for Montgomery Ward. He sent a truckload of televisions bearing the brand name "RCA" which Montgomery Ward cannot sell because they are not the "Airline" brand. "I asked him could I get in trouble and he said, 'No, there are different ways I can do it. I am considering you a wholesaler because we get a shipment in and it costs too much to send back to the company. So later then just to take another percentage of the actual price, wholesale price, we can sell in quantity to you and take your name as a wholesaler.'" The appellant phoned Roger. After the witness talked to Roger, he gave the $5000 cash to the appellant. Mr. Clarke testified: "He had me psyched up between talking to the both of them and he said, 'You have got to give the money now so we can get the truck out of here and go.' . . . I was supposed to go up to the mail machine center in Wheaton Plaza and he was supposed to come up in the company truck and bring the sets."

The appellant departed and entered the Wards Store. The witness entered his car with the expectation that the televisions were soon to be brought to him in a Montgomery Ward truck; then he was to blink his car lights and the truck would follow as he distributed the T.V.s to the 30 to 40 subscribers. Clarke was left holding his subscriber list; the televisions were never delivered.

During trial, the appellant unsuccessfully objected to introduction into evidence of the substance of the telephone conversations between Roger and Clarke and Hildebrand.

## I The Interstate Detainer Agreement

The Interstate Agreement on Detainer provides in pertinent part for the voluntary return to Maryland of prisoners presently incarcerated under sentence in foreign jurisdictions but against whom detainers have been filed concerning crimes committed in Maryland. The instant case involves two sections of the Act: (1) § 616D (a) which requires trial within 180 days subsequent to receipt by proper Maryland authorities of the prisoner's request for final disposition, unless the period is extended by a "necessary and reasonable" continuance for "good cause"

shown; (2) § 616F (c) which enforces violations of § 616D by requiring that the pending indictment be dismissed with prejudice.

These sections, the Court of Appeals of Maryland has recently interpreted to be self-executing. *Hoss v. State*, 266 Md. 136, 292 A. 2d 48 (1972).[3] The Court held the motion for a § 616D continuance had to be made and granted within the prescribed 180 days to effectively halt the running of the period and thereby to preclude dismissal under § 616F. The statute expressly provides that it is to be liberally construed so as to effectuate its purposes; thus the Court required prophylactic application of § 616F (c). Therefore, the indictment against Hoss was dismissed with prejudice. In explaining this rationale, the Court quoted from *State v. Lippolis*, 107 N. J. Super. 137 (App. Div.), 257 A. 2d 705, 709-10 (1969):

> ". . . [I]t is appropriate to remind ourselves of the serious disadvantages of prisoners serving a term in one state but under detainer for untried indictments of another. This situation, relief of which is the heart of the policy of the interstate act, has been cogently summarized by Mr. Justice Stewart in *Smith v. Hooey*, 393 U. S. 374, 378-380, 89 S. Ct. 575, 577, 21 L.Ed.2d 607 (1969). See also Note, 18 Rutgers L. Rev. 828, 833-34 (1964); Note, 77 Yale L. J. 767, 769-71 (1968).
>
> "* * * The Legislature adopted the dismissal sanction not because a prisoner would be prejudiced at trial if trial were delayed more than 180 days after demand but because such a sanction for failure to try defendant within a fixed, reasonable

---

**3.** The Court held untimely the inaction by a judge who took under advisement a motion for continuance, which was contested by appellant and his counsel, and then failed to rule on the motion until after the statutory period had terminated and the appellant had moved to dismiss. The instant case is readily distinguished for herein the judge ruled on the continuance four (4) days before the period expired. Defense counsel approved and apparently requested the extension of time which was granted in the instant case.

period of time after demand was regarded as essential to produce general compliance with the statutory mandate. The sanction is a prophylactic measure to induce compliance in the generality of cases." 266 Md. at 145-46.

It has been oft stated, that there can be no doubt that disposition of petitions for continuance are within the sound discretion of the trial judge and that his ruling will not be disturbed on appeal absent clear abuse. *Hoss v. State, supra* at 144. The issue presently before us is whether, during the arraignment hearing on February 6, 1973, four (4) days before the end of the 180 day period, the judge granted a motion for continuance upon "good cause shown."

The following colloquy at arraignment constitutes the motion for continuance by which the State seeks to invoke the statutory exception within § 616D (a):

"Mr. State, how soon can you get this case to trial, ready for trial?

Mr. Patterson: Your Honor, I believe that the State would be ready to go to trial on this case in a very short while. If the Court would wish to set a trial date at this time, it could be scheduled.

The Court: I would have to call the Assignment Office and discuss if they can give us an early trial date, right now.

Mr. Sherman: That would be fine with us, Your Honor.

Mr. Patterson: That would be acceptable to us.

The Court: How early can you go?

Mr. Patterson: I would estimate two, three weeks, Your Honor.

The Court: How early is the defendant going to be ready to proceed?

Mr. Sherman: Your Honor, I think the only problem would be some discovery before trial. I would have to check with the defendant as to

whether it would be formal or informal discovery. I think he wishes to have the trial over as soon as possible, to try to expedite it.

The Court: Do you think two to three weeks would be ample for him to complete informal discovery?

Mr. Sherman: Yes, Your Honor.

The Court: If that is the route chosen; and if needful, formal discovery could be handled expeditiously?

Mr. Sherman: Yes, Your Honor; I think so. We could probably be ready in three weeks.

The Court: Very well. Let's see if we can get a trial date.

The motion for speedy trial seems to be well-founded and is granted. The Court sets this matter for trial, with the concurrence of the Assignment Office, for March 5th, 1973.

If the State or the defendant should find it necessary to ask for continuance of that trial date, I suggest that you do so promptly."

Clearly the arraigning judge granted an extension of the time beyond the statutory period of 180 days. At trial, the court, ruling against the defendant's motion to dismiss, interpreted the arraignment discourse to have constituted the granting of a continuance. We agree with the trial court that a continuance was timely granted within the 180 day period.

It remains whether this continuance was granted for "good cause". *State v. Hoss, supra. Commonwealth v. Fisher,* 451 Pa. 102, 301 A. 2d 605, 607 (1973). We cannot agree that a general statement that the State was not ready for trial, as opposed for example to a statement that a crucial witness was presently hospitalized, can be considered as good cause. The statute, as interpreted by the Court of Appeals, mandates that the State be ready for trial within the 180 days. Its excuse for not trying the case must amount to more

than lack of preparation. When the State receives such proper statutory notice it is expected to see that the case is actually tried within the 180 days. We are persuaded, however, that since the defense requested time for discovery, the court did have adequate reason to delay the trial for a period of 23 days beyond the statutory period. See *Commonwealth v. Scott*, 219 Pa. Super. 470, 281 A. 2d 754, 756 (1971) which held that the statutory period was stopped for good cause, when the judge granted defense counsel's request for continuance predicated upon lack of preparation; *Commonwealth v. Martin*, 445 Pa. 49, 282 A. 2d 241, 244 (1971) wherein an active plea bargaining posture and a defense counsel request for continuance constituted good cause to interrupt the statutory period; *State v. Masselli*, 43 N. J. 1, 202 A. 2d 415, 421 (1964) holding that defendant's personal request created a good cause interruption of statutory period; *People v. Stroble*, 31 Mich. App. 94, 187 N.W.2d 474, 477 (1971) in which petitioner's federal habeas corpus petition tolled the running of statutory period; *cf. Commonwealth v. Klimek*, 416 Pa. 434, 206 A. 2d 381, 382 (1965) ruling a motion for severance not to be effective to discontinue the running of the statute.

For cases involving failure to move for continuance within the statutory period, *see Commonwealth v. Fisher*, 451 Pa. 102, 301 A. 2d 605, 607 (1973); *Commonwealth v. Bell*, 442 Pa. 566, 276 A. 2d 834, 837 (1971).

## II  False Pretenses

The elements of the crime of false pretenses are detailed in Md. Code, Art. 27, § 140 and analyzed in *Polisher v. State*, 11 Md. App. 555, 560, 276 A. 2d 102 (1971).

The instant case raises the issue of whether the State proved that a past or existing fact was misrepresented. We find the facts as outlined above support rational inferences of a misrepresentation of present existing facts: (1) that there were more than 30 to 40 televisions for sale, (2) that appellant had obtained them from his brother-in-law's wholesaling operation, and (3) that appellant would deliver

them immediately to Mr. Clarke for $5,000 cash paid in advance. The requisite knowledge and intent of the appellant can be inferred from these misrepresentations. Mr. Clarke relied upon them to his detriment when he paid over the $5,000 and never received the televisions in return.

We distinguish the instant case from *Davis v. State*, 18 Md. App. 378, 381, 306 A. 2d 620 (1973), wherein an organization providing security services was apparently in existence. The misrepresentation therein went to intangible services to be rendered. We found that the State had not presented sufficient evidence to prove a misrepresentation of past or existing fact. Herein, the evidence is clear that goods, falsely represented as being in existence and ready for immediate delivery, were paid for in reliance but not delivered.

### III Hearsay Telephone Conversations

Appellant asserts that *Basoff v. State*, 208 Md. 643, 649, 119 A. 2d 917 (1956) requires that we exclude, as being unauthenticated, the instant telephone conversations. Without regard to authenticity, we find *Basoff* to permit the introduction into evidence of the instant conversations. They were admitted for the fact that the messages were received and were relied upon and constituted a link in the chain of facts tending to show that appellant participated in a false pretense. See *Ford v. State*, 11 Md. App. 654, 657, 276 A. 2d 423 (1971).

*Wigmore*, of course, states it well: "Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." VI Wigmore, *Evidence* § 1789, at 235 (3d ed. 1940). *See also* VI Wigmore, *Evidence* § 1766, at 177-78; *McClain v. State*, 10 Md. App. 106, 113, 268 A. 2d 572 (1970); *Nixon v. State*, 2 Md. App. 611, 615-16, 236 A. 2d 304 (1967).

*Judgment affirmed.*