EDWARD W. PURVIS, The Younger *v.* STATE
OF MARYLAND

[No. 674, September Term, 1974.]

*Decided September 5, 1975.*

The cause was argued before Morton and Gilbert, JJ.,
and William J. O'Donnell, Associate Judge of the Court of
Appeals of Maryland, specially assigned.

*William Franklin Gosnell, Assigned Public Defender,* for
appellant.

714

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *James Sherbin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

O'Donnell, J., delivered the opinion of the Court.

The appellant, Edward W. Purvis, Jr., was convicted on May 31, 1974, following a jury trial in the Criminal Court of Baltimore (Judge Perry G. Bowen presiding)[1] upon counts of two indictments charging, *inter alia,* two separate acts of distribution of heroin, as well as a count in a third indictment which charged larceny after trust.

The evidence offered in support of the narcotic counts showed that Purvis on November 1, 1973 sold 151.6 milligrams of heroin to two undercover police officers for $130 and that he had made another sale, on the next day, to the same officers of 183.5 milligrams of heroin for the same amount of money. The larceny after trust charge was predicated on evidence that on November 6, 1973 the same two detectives had given Purvis $150 in prepayment of a "spoon" of heroin but that Purvis had absconded with the police money without delivering the contraband. Following a denial of a motion for new trial, the appellant was sentenced on one of the narcotic charges to a ten-year term to run consecutively to the sentence he was then serving; upon the second narcotic charge he was also sentenced to a term of ten years, dating from the date of disposition (August 1, 1974) and to that extent concurrently with the previous sentence which he was serving. The sentence was suspended generally on his conviction for larceny after trust.

In his appeal here Purvis asserts: (a) that reversible error was committed when the trial court permitted hearsay testimony of information given to the police by an informant; (b) that he was denied effective representation

---

1. Of the Circuit Court for Calvert County on assignment to assist in the Criminal Court of Baltimore.

by counsel and a constitutional right to a fair trial when the trial court denied him a continuance based upon the inability of his trial counsel to locate and produce at the trial two material witnesses; and (c) reversible error was committed in permitting testimony concerning a statement made by him at the time of his arrest, without his having been supplied with a copy of that statement, as well as conducting an examination concerning the admissibility of the statement in the presence of the jury.[2]

Detective Larry W. Strickland, an undercover agent of the Drug Enforcement Administrative Task Force of the Baltimore City Police Department, one of the two undercover policemen to whom the appellant allegedly had sold the heroin and from whose possession the prepaid purchase funds had been obtained, when asked by the Assistant Prosecutor to relate to the jury how it came about that he had purchased one gram of heroin from the appellant on November 1, 1973, responded as follows:

"A  Well, I was introduced to the defendant by an S.E.

Q  Well, they don't know what S.E. is.

A  An S.E. is a paid informant. On the 1st of November, 1973 about 5:00 P.M., Detective Holly and myself met S.E. 1-3-X539, advised that a subject by the name of Slim was selling heroin in the South Baltimore area. With this we drove in an official government vehicle to a public telephone to the Northeastern District. We called Edward Purvis and advised him I wanted to purchase heroin at approximately 5:30.

MR. COLEMAN: If Your Honor please, I would object. I don't believe there has been some ground work laid for the introduction of evidence by a so called informer.

---

2. Not in the order in which they were set forth in his brief.

THE COURT: Overruled.

MR. COLEMAN: And this, if Your Honor Please, would amount to hearsay."

In overruling the objection of appellant's counsel the trial court stated:

"Overruled. I think it's offered not to prove the truth of what was said, but the fact that it happened and as such is testimony to an oral act, not within the ambit of the hearsay rule. Objection is overruled."

The State argues that the answer to the question by Detective Strickland when he said that he was "advised that a subject by the name of 'Slim' was selling heroin in the South Baltimore area" was not offered "to prove that the appellant was, in fact, selling heroin . . . as Detective Strickland was advised by the informant," but was offered in response to the inquiry addressed to Detective Strickland to explain how it came about that he had purchased heroin from the appellant.

The general rule is that a statement is admissible if introduced for the purpose of showing that a party relied on and acted upon the statement and is not introduced for the purpose of showing that the facts stated in the declaration are true. *See* C. McCormick, Evidence § 249 at 589-90 (2d ed. 1972).

In *Dennett v. State*, 19 Md. App. 376, 311 A. 2d 437 (1973), Judge Thompson, for this Court, in holding that telephone messages were received and were relied upon and constituted a link in the chain of facts tending to show that the appellant had participated in a false pretense, stated:

"*Wigmore*, of course, states it well: 'Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the

Hearsay rule is concerned.' VI Wigmore, *Evidence* § 1789, at 235 (3d ed. 1940). *See also* VI Wigmore, *Evidence* § 1766, at 177-78; *McClain v. State*, 10 Md. App. 106, 113, 268 A. 2d 572 (1970); *Nixon v. State*, 2 Md. App. 611, 615-16, 236 A. 2d 304 (1967)." 19 Md. App. at 385, 311 A. 2d at 443.

In *Tumminello v. State*, 7 Md. App. 380, 256 A. 2d 342 (1969), the conviction of the appellant was reversed because of the exclusion of the appellant's conversations with both a clerk of court, in which he obtained information as to the suspension of a prisoner's sentence, and with the complaining witness in which the witness quoted his attorney, in a proceeding where the appellant had been convicted for false pretenses involving the release of a prisoner in exchange for a sum of money. In holding that such conversations were "verbal acts" and not hearsay, Judge Thompson, who delivered the opinion for this Court, stated:

"We think all of these excluded conversations were admissible under the familiar rule that they were offered for the purpose of establishing motive, intent, and to explain subsequent actions. In 6 Wigmore, *Evidence*, § 1789, *Friend v. Hamill*, 34 Md. 298, 308 is quoted as follows:

'Where the question is, whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence and not mere hearsay. . . .'

And, thus, under Professor Wigmore's theory, such conversations are not hearsay at all but verbal acts. To the same effect see McCormick, *Evidence*, Ch. 25, § 228, p. 464. Other writers would call such evidence admissible as part of the *res gestae*. See *Van v. State*, 1 Md. App. 347, 230 A. 2d 109 and *Hall v. State, supra*. In the latter case, we referred to *Robinson v. State*, 57 Md. 14, wherein the Court of

Appeals found reversible error because of the failure of the trial judge to admit evidence . . . .

\* \* \*

In the same case, *Hall v. State, supra,* we quoted the Court of Appeals in *McBriety v. Phillips,* 180 Md. 569, 26 A. 2d 404 as follows:

' "Under the rule of res gestae, conversations of parties in the course of a transaction are admissible when the words are spontaneous and so closely related to the principal transaction as to explain its character. 1 Jones on Evidence, § 358; 6 Wigmore on Evidence, § 1776; 20 Am. Jur., Evidence, §§ 662, 680; *Such utterances,* irrespective of their trustworthiness as assertions, *are received as verbal parts of the entire act.* In upholding this rule Justice Swayne said: 'In the complexity of human affairs, what is done and what is said are often so related that neither can be detached without leaving the residue fragmentary and distorted. There may be fraud and falsehood as to both; but there is no ground of objection to one that does not exist equally as to the other. \* \* \* The tendency of recent adjudications is to extend rather than to narrow, the scope of the doctrine. Rightly guarded in its practical application, there is no principle in the law of evidence more safe in its results.' *Travellers' Insurance Co. v. Mosley,* 8 Wall. 397, 408, 19 L. Ed. 437, 411." ' (Emphasis supplied.) 7 Md. App. at 383-85; 256 A. 2d at 344-45.

Another rule, however, is equally applicable. In C. McCormick, Evidence § 248 at 587 (2d ed. 1972) it is stated:

"In criminal cases, the arresting or investigating officer will often explain his going to the scene of the crime or his interview with the defendant, or a search or seizure, by stating that he did so 'upon information received' and this of course will not be

> objectionable as hearsay, *but if he becomes more specific by repeating definite complaints of a particular crime by the accused, this is so likely to be misused by the jury as evidence of the fact asserted that it should be excluded as hearsay."* (Emphasis supplied; footnotes omitted.)

Based on our holdings in *Dennett* and in *Tumminello*, we cannot agree that the quoted answer by Detective Strickland fell within the definition of a "verbal act" or as characterized by the trial judge, as an "oral act"; they certainly were not contained as "parts of the entire act" and the issue of the lawfulness of the appellant's arrest does not appear to have been challenged.

Pointing out that evidence, such as that given by Detective Strickland, even though hearsay, is admissible when the lawfulness of the defendant's arrest has been challenged but is not admissible on the issue of his guilt or innocence, the Court of Appeals, in *Farrow v. State*, 233 Md. 526, 197 A. 2d 434 (1964), stated:

> "We note that in many cases coming before this Court where the lawfulness of an arrest and of a search incidental thereto are in issue, direct evidence to show the basis upon which the arresting officers acted either is not offered at all, or is alluded to guardedly as 'information received' or in some other and equally uninformative manner (doubtless designed to avoid an objection that it is hearsay), or is actually excluded *as hearsay. On the question of the guilt or innocence of the defendant it clearly is hearsay and hence is inadmissible; but on the issues of probable cause and the lawfulness of arrest and of the admissibility of evidence obtained through any search made in connection with the arrest, such testimony, even if hearsay, is directly relevant and is admissible.* Therefore, the determination of the admissibility of evidence which is dependent upon the lawfulness of an arrest should be made by the trial judge as a

preliminary matter quite apart, of course, from the question of the guilt or innocence of the accused; and if the case is being tried before a jury, such a matter should be heard out of the presence of the jury." (Emphasis supplied.) 233 Md. at 532-33, 197 A. 2d at 437-38.

See also Cleveland v. State, 8 Md. App. 204, 259 A. 2d 73 (1969); Winebrenner v. State, 6 Md. App. 440, 443, 251 A. 2d 610, 612 (1969) and Viehmeyer v. State, 3 Md. App. 702, 708, 240 A. 2d 649, 652 (1968).

The admissibility of such evidence has been sustained in a case where the defendant asserted entrapment. See Commonwealth v. Miller, Mass., 282 N.E. 2d 394 (1972) where the court permitted an undercover agent, who posed as a patient and who made a number of purchases of illegal drugs from a doctor to testify that narcotic users and purchasers "had mentioned her name," the court holding that although such statement could not be considered as evidence of the alleged criminal activity charged, it was admissible to show "good cause" for the police undercover activity directed against the defendant and was material on the issue as to whether or not the inducement by the police agent was so "shocking and offensive" as to constitute entrapment.

Compare Whiting v. United States, 296 F. 2d 512 (1st Cir. 1961) in which the appellant was charged with making several sales of heroin to a police agent and who similarly raised the defense of entrapment. The agent testified that he had received four or five anonymous phone calls that the defendant was selling and using narcotics and that the defendant had made trips to New York to procure the drugs. The trial judge admitted the statement to show that the police had "good cause" to believe the defendant was involved in drug traffic and also to show, since there was a defense of entrapment, the defendant's predisposition. The U.S. Court of Appeals reversed holding such evidence inadmissible in that it undertook to establish the defendant's bad reputation.

In *Brown v. United States*, 202 F. 2d 474 (5th Cir. 1953), in a prosecution for knowingly and unlawfully acquiring marihuana without having paid a tax, police officers, who had previously obtained a search warrant and seized marihuana at the appellant's residence, testified over objection that "they had information that the defendants were dealers in marihuana." Although the trial court admitted the evidence as establishing reasonable grounds for the issuance of a search warrant and instructed the jury not to consider it as evidence against the defendant, the U. S. Court of Appeals for the Fifth Circuit stated:

> "This evidence, in our opinion, was pure hearsay and wholly incompetent on the trial below, however proper it may have been on the hearing of the application for a search warrant. The search warrant was *prima facie* valid, and the propriety of its issuance was not being questioned. To allow the officers to give hearsay evidence that the defendants were dealers in marihuana cannot be justified upon the ground that the testimony showed the basis for the issuance of the search warrant. Such incompetent evidence is reversible error in a close case like this one." 202 F. 2d at 475.

In *State v. Kimble*, 214 La. 58, 36 So. 2d 637 (1948), in a prosecution for illegally handling and storing intoxicating liquors for the purposes of sale, a police officer had testified that he had received complaints that the defendant was engaged in the handling and storing of liquor for sale. In reversing the conviction, the Supreme Court of Louisiana stated that it was error not to have excluded the evidence "on the ground that it was clearly hearsay"; and that while it is not violative of a hearsay rule for a police officer to state that he made an arrest or a search and seizure as a result of information received or a complaint, the exception is limited to the statement of the fact and the rule seems to be that " 'while an officer may testify before a jury that, acting upon information, he did certain things, *he may not go further and testify as to precisely what he was told about*

*the particular place or the particular person.'* " 214 La. at 62, 36 So. 2d at 638.

Similarly, in *State v. Bankston,* 63 N. J. 263, 307 A. 2d 65 (1973), where a policeman in a prosecution for the possession of drugs testified that he went to a tavern and there saw a man who answered the description of a person who had been described to them by an informer as possessing narcotics and that the defendant had answered that description, it was held to be an erroneous admission of hearsay testimony in violation of the defendant's Sixth Amendment right to confrontation. The Supreme Court of New Jersey rejected the argument that the testimony was merely used to explain what had prompted the police to go to the tavern and that although the hearsay rule is not violated when an officer explains the reason he approached the suspect or went to the scene of a crime but states that he did so "upon information received," the hearsay rule is violated when the officer becomes more specific by repeating what some other person told him concerning crime by the accused. It was held that the officer's testimony — although he never specifically repeated what the informer had told him — created the inescapable inference that the informer had given him information that the defendant would have narcotics in his possession and that "[t]hus the jury was led to believe that an unidentified informer, who was not present in court and not subjected to cross-examination, had told the officers that defendant was committing a crime." As such, the testimony was "clearly hearsay." 63 N. J. at 271, 307 A. 2d at 69.

In *State v. Gerhardt,* 115 Ohio App. 83, 184 N.E.2d 516 (1961), the defendant's conviction for possession of burglary tools was reversed because the trial court had admitted into evidence a teletype message sent by West Virginia State Police headquarters to one of its offices, which was in turn relayed to Ohio law enforcement officers and which stated that "two known safe men" had "pulled jobs in this area" and were leaving Kentucky "with intention of pulling a safe job within a 200 mile radius of Cincinnati, Ohio." The teletype named the suspects, described the vehicle in which

they were believed traveling and that they would be "carrying [a] complete burglary outfit." The Court of Appeals of Ohio, finding that the teletype memorandum was hearsay evidence, held that its admissibility was prejudicial to the appellant and violated his constitutional rights to be confronted by the witnesses against him, reversed the conviction.

It was held in *Griffin v. State,* 97 Ga. App. 772, 104 S.E.2d 511 (1958), a prosecution for the possession of untaxed liquor, that testimony by the sheriff that "we received reports that Mr. Griffin was selling whisky" was inadmissible hearsay. The conviction, however, was affirmed because the trial court sustained the defendant's objection thereto, ruling the evidence out of the case and instructed the jury not to consider it.

The Court of Criminal Appeals of Texas generally holds that this type of hearsay evidence is clearly inadmissible when there is no issue of probable cause for the arrest, or the search of the defendant. *See Smith v. State,* 511 S.W.2d 296 (Tex. Cr. 1974) holding inadmissible as hearsay, in a prosecution for possession of drugs, a statement by a police officer that an informant had told him that the defendant had sold him some heroin for $10 and had some in his possession; *Maxon v. State,* 507 S.W.2d 234 (Tex. Cr. 1974) where in a prosecution for the illegal possession of drugs the police officer was asked: "What . . . aroused your curiosity [as to the] address? " and in response thereto the officer testified that he had received information that people living at the address "were dealing [in drugs]." Since probable cause to enter and search the house was not in issue it was held error to have permitted such testimony before the jury. In *Ramos v. State,* 395 S.W.2d 628 (Tex. Cr. 1965) a conviction for the possession of heroin was reversed when the police officer, in response to a question as to when he first saw the appellant on the day in question, replied: " 'We received information that they were shooting heroin at the service station at Broadway and Avenue A in the rest room.' " This evidence was held to be inadmissible hearsay since there was no issue of probable cause. The Texas court

pointed out — as is the rule in this State — that the issue of probable cause for an arrest is to be heard by the court and not by the jury. *See Cleveland v. State, supra,* and Maryland Rule 729 d 2.

In a prosecution for transporting illegal liquor, where the arresting officer was asked why he had come to a particular place at the time just before the arrest, he replied: " 'We had information that deliveries of whiskey and beer was being made during shift change. . . .' " The court in *Wood v. State,* 166 Tex. Cr. 319, 313 S.W.2d 615 (1958) held that such statement was inadmissible hearsay conveying to the jury that the appellant was engaged in making deliveries of liquor during the change of police shifts and was reasonably calculated to prejudice the defendant's rights before the jury. As was well stated in *Reddy v. Snepp,* 357 F. Supp. 999, 1003 (W.D.N.C. 1973), tips from informants have a recognized place in law enforcement, but the use of such information "is allowed only to justify an arrest, a search or a seizure *which leads to discovery of otherwise competent evidence.*"

The response by Detective Strickland submitted to the jury the out-of-court declaration of his numerically identified informant that one "Slim" was engaged in selling heroin in the South Baltimore area and that the appellant, Purvis, was "Slim." The fact that Purvis was a seller of heroin was the very object which the prosecution had undertaken to establish and did so solely on the basis of the testimony of Detective Strickland and his colleagues. The statement which Detective Strickland attributed to his informer became evidence by a third person, an out-of-court declarant, who was not subject to cross-examination and who did not confront the appellant that Purvis was factually a seller of narcotics, whose operation was centered in the South Baltimore area and that he had indeed sold them to this unidentified individual. The only precaution taken to dispel from the jury's mind this likely interpretation of the statement came when the trial judge ruled that the statement was offered "not to prove the truth of what was said, but the fact that it happened and as such is testimony

to an oral act not within the ambit of the hearsay rule." No further instruction was given to the jury.

As we see it, the statement was of misleading probative force which tended to influence the trier of facts to believe that before Purvis' contact with the officers he was already a dealer in heroin and thus more likely to have sold the drug to the detectives as charged.

In *Dobbs v. State*, 148 Md. 34, 129 A. 275 (1925), the Court of Appeals, in holding in a prosecution for murder committed during a robbery that evidence of another robbery committed by them was reversible error, stated:

> "[W]hen the errors are of such a character, and so interwoven with the case, as to lead a fair and impartial mind, trained and experienced in judicial investigation, upon an examination of the whole case and all the rulings involved therein, to the conclusion that there is a *reasonable probability that such errors may have affected the determination of the case, they are prejudicial and reversible.*" (Emphasis supplied.) 148 Md. at 48-49, 129 A. at 281.

*See also Kotteakos v. United States*, 328 U. S. 750, 764-65 (1946) concerning prejudicial error.

Because of the conclusion we reach finding that it was error to have admitted the hearsay testimony by Detective Strickland, we need not reach the other contentions raised by the appellant.

> *Judgment of the Criminal Court of Baltimore reversed and case remanded for a new trial; costs to be paid by Mayor and City Council of Baltimore City.*