JOHN S. ROBINSON *vs.* THE STATE OF MARYLAND.

*Admissibility in Evidence of Declarations of the Mother on a Trial of an alleged Abductor of her Children.*

At the trial of the appellant indicted for forcibly abducting minor children of one McK., and for persuading and enticing the children away from the father, the State produced as a witness J. McK. a son of McK., (not one of the children alleged to have been abducted) who testified, that in August, 1880, his mother was living, with the said children in the mountains, above Clearspring, in Washington County, and his father was temporarily absent in Montgomery County, engaged at work, leaving his family at his house; that during the absence of his father, the prisoner came to the house, and, brandishing a revolver, said to witness, and his mother, that he was going to be boss now for awhile; that the prisoner then loaded the furniture in the house, on a wagon belonging to the father, and harnessed the horse thereto, and against the wishes, and in spite of the remonstrances, tears and crying of the mother, about 11 o'clock at night, made her and the children go with him, and drove away the horse and wagon, that his mother said she did not want to go away, but was compelled to do so through fear of the prisoner, who was armed with a revolver; that they went down the road passing several houses named, and came to H's, where they remained over night; that the wagon broke down on the road, and they walked then to H's; that on the way the prisoner said, that he would shoot Mrs. McK. and witness if they tried to go back or run away.  The State also called the husband and father, who testified to being away at the time; and among other things, that he had written to his wife sometime before, that if she had more pigs than she needed, she could sell some.  The prisoner called S., who testified, that she was living at the time with Mrs. McK. as a servant; that two days before Mrs. McK. and the children left home the prisoner came to the house and bargained with Mrs. McK. for two pigs, and went away leaving the pigs; that on the morning Mrs. McK. went away, she and her son, J. McK., the witness for the State, about 6 o'clock in the morning, commenced to load the wagon with the furniture and harnessed the horse to the wagon; that after the wagon was loaded and the horse harnessed to it, the

Robinson *vs.* The State.

prisoner came along and asked Mrs. McK. about the pigs he had bought, and she told him that the pigs were on the wagon, and if he would drive the horse down the mountain for her, the pigs would be hauled on the wagon; the prisoner then drove the wagon away from the house with Mrs. McK. and the children. The prisoner then produced Mrs. H., and offered to prove by her, that when Mrs. McK. and the children came to her house, about ten miles from McK's house, in the evening, Mrs. McK. told witness that she had made up her mind not to live with her husband any longer, and had left home and taken with her, her children, and had gotten the prisoner to drive the wagon, and that the prisoner drove it at her request, and also that she declared these things to the witness in the absence of the prisoner; to which offer the State objected (the said Mrs. McK. being alive and residing in Washington county, within reach of the process of this Court,) which objection the Court below sustained, and refused to allow the testimony to go to the jury. On exception, it was HELD:

That the testimony was admissible.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., GRASON, MILLER, ROBINSON, IRVING, RITCHIE, and MAGRUDER, J.

*Edward Stake* and *A. K. Syester*, for the appellant.

*Charles J. M. Gwinn, Attorney-General*, for the appellee.

MAGRUDER, J., delivered the opinion of the Court.

The appellant (a mulatto,) was indicted for forcibly abducting, taking, and carrying away four children of one James McKee, aged seven, six, five, and three years, respectively. Another count charged him with persuading and enticing the children away from the father.

Robinson *vs.* The State.

The bill of exceptions presents the sole point of the propriety of the rejection of certain testimony offered by the appellant.

At the trial the State produced as a witness Joseph McKee, a son of the said James McKee, (not one of the children alleged to have been abducted) who testified that in August, 1880, his mother, Mrs. McKee, was living with the said children in the mountains above Clearspring, in Washington County, and his father was temporarily absent, in Montgomery County, engaged at work, leaving his family at his house; that during the absence of his father, the prisoner came to the house and brandishing a revolver, said to witness and his mother that he was going to be boss now for awhile; that the prisoner then loaded the furniture in the house on a wagon belonging to the father, and harnessed the horse thereto, and against the wishes, and in spite of the remonstrances, tears and crying of the mother, about eleven o'clock at night made her and the children go with him, and drove away the horse and wagon; that his mother said she did not want to go away, but was compelled to do so through fear of the prisoner, who was armed with a revolver; that they went down the road, passing several houses named, and came to Philip Householder's, where they remained over night; that the wagon broke down on the road, and they walked then to Householder's; that on the way the prisoner said he would shoot Mrs. McKee and witness if they tried to go back or run away.

The State also called James McKee, the husband and father, who testified to being away at the time, and also among other things that he had written to his wife sometime before, that if she had more pigs than she needed she could sell some.

The prisoner called Ella Schrader, who testified that she was living at the time with Mrs. McKee, as a servant; that two days before Mrs. McKee and the children left home, the prisoner came and bargained with Mrs. McKee

for two pigs and went away, leaving the pigs; that on the morning Mrs. McKee went away, she and her son Joseph, the witness for the State, about six o'clock in the morning, commenced to load the wagon with furniture and harnessed the horse to the wagon; that after the wagon was loaded and the horse harnessed to it, the prisoner came along and asked Mrs. McKee about the pigs he had bought, and she told him the pigs were in the wagon, and if he would drive the horse down the mountain for her, the pigs would be hauled in the wagon; the prisoner then drove the wagon away from the house with Mrs. McKee and the children.

The prisoner then produced Mrs. Mary Householder, and offered to prove by her, that when Mrs. McKee and the children came to her house, about ten miles from McKee's house, in the evening, Mrs. McKee told witness that she had made up her mind not to live with her husband any longer, and had left home and taken with her her children, and had gotten the prisoner to drive the wagon, and that the prisoner drove it at her request, and also that she declared these things to the witness in the absence of the prisoner; to which offer the State, by its counsel objected, (the said Mrs. McKee being alive and residing in Washington County, within reach of the process of the Court,) which objections the Court sustained, and refused to allow the testimony to go to the jury, to which the defendant excepted; and this ruling is the point for decision upon this appeal.

Here was a direct conflict between the witness on the part of the State, and the witness on the part of the prisoner, as to the nature of the occurrence, which was the subject-matter of the indictment; and the prisoner sought to sustain his witness' version of the affair by proof of declarations of the wife made at a casual stopping place on the journey, and before the project was at an end so far as we can see from the proof, and out of the presence

and control of the prisoner, going to explain the transaction and her motives and purposes and the agency of the prisoner, and certainly having an important bearing upon the transaction, if believed by the jury.

Why should the prisoner not have been entitled to the benefit of this testimony? It is objected that it is hearsay. That Mrs. McKee could have been called as a witness. But is she any better able to testify to what she said than the proposed witness who heard her? And if the wife has returned to the husband's control, why should the prisoner take the risk of the testimony of a witness presumably under coercion, and at all events under a temptation to testify against him to screen herself, and who to testify for him would have to testify to her own shame and disgrace. What she said at the time characterizes the act, is a part of the *res gestæ*, and can be as well proved by another witness as by herself.

The ground upon which declarations like these, attending an act and showing its character and purpose, are admitted, is thus stated in 1 *Taylor on Ev.*, sec. 521 :

"Certain other declarations and acts are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation.

"The affairs of men consist of a complication of circumstances so intimately interwoven as to be hardly separable from each other. Each owes its birth to some preceding circumstance, and in its turn becomes the prolific parent of others, and each, during its existence, has its inseparable attributes, and its kindred facts, materially affecting its character, and essential to be known, in order to a right understanding of its nature. These surrounding circumstances may always be shown to the jury along with the principal fact, provided they constitute parts of what are termed the *res gestæ*, and whether they do so or not must in each particular case be determined by the

Robinson *vs.* The State.

Judge in the exercise of his sound discretion, according to the degree of relationship which they bear to that fact;" and then after giving cases in which such proof was admitted, the author goes on to say: " So also where a person enters upon land in order to take advantage of a forfeiture to foreclose a mortgage, to defeat a disseisin or the like ; or changes his actual residence or domicil, or is upon a journey, or leaves his home, or returns thither, or remains abroad, or secretes himself, or in fine does any other act material to be understood ; his declarations made at the time of the transaction, and expressive of its character, motive or object are regarded as ' *verbal facts,*' indicating a present purpose and intention, and are therefore admitted in proof like any other material facts." See, as illustrating this principle, *Aveson vs. Ld. Kennard,* 6 *East,* 188 ; *Thomson and Wife vs. Trevannon, Skinner,* 402 ; *Bateman vs. Bailey,* 5 *T. R.,* 512 ; *Doe vs. Arkwright,* 5 *C. & P.,* 575 ; *Lord vs. Colvin,* 4 *Drew,* 366 ; *Gorham vs. Canton,* 5 *Greenl.,* 266 ; *Johnson vs. Sherwin,* 3 *Gray,* 374 ; *Snover vs. Blair,* 25 *N. J. Law,* 94 ; *Smith vs. Cramer,* 1 *Bing. N. C.,* 585 ; *Thorndike vs. City of Boston,* 1 *Metc.,* 242 ; *Lund vs. Tyngsbourg,* 9 *Cush.,* 37.

The objection to this proof urged by the State, is that a person who has held another in unlawful duress, cannot exculpate himself when brought to trial for such offence, by giving in evidence any declarations made by the injured person, while in his unlawful custody. But that is only begging the question. The very point at issue was whether the wife was under restraint of the prisoner, upon which point the evidence was conflicting, and that was the very matter to be ascertained ; and the proposed declarations of the wife were inconsistent with the idea of her being under restraint, and entirely consistent with the idea of the journey being her own act without the agency or procurement of the prisoner, and therefore most material to the inquiry.

The cases cited in which the declarations of the wife were held inadmissible in suits brought by the husband for injuries to his marital rights, or like cases, civil or criminal, were cases in which naked declarations of the wife, not connected with any particular transaction were sought to be introduced; and the Courts held that it was but an indirect mode to bring in the testimony of the wife, who was incompetent as a witness. That was the ground taken in *Winsmore vs. Greenbank, Wills R.*, 578, upon which the other cases rely. But it will be seen that in these cases, the declarations are not offered in connection with and as characterizing or explaining particular acts, but independent declarations offered *per se.*

In the case of *Kidder vs. Lovell*, 14 *Pa.*, (*State*,) 214, which is one of the cases relied on by the State, the Court distinguishing between the case of declarations, a part of an act, and mere naked declarations says: " whether in an action like this the declarations of the absconding wife made on the eve of her departure, and in especial reference to it as explanatory of the moving cause, could be received in evidence as of the *res gestæ*, it does not seem to be necessary here to determine. When the offer of the declarations was first proffered, the Court below ruled them inadmissible upon the understanding conveyed by the offer, that they were contemporaneous with the main fact under consideration, and so connected with it as to illustrate its character. It is only their immediate connection with the principal fact which can distinguish such declarations from mere hearsay. To become of the *res gestæ*, they must have been made at the time of the act done, which they are supposed to illustrate." And in that case the declarations were rejected only because not so connected. Reference is there made to the case of *Hadley vs. Carter*, 8 *N. H.*, 40, where in an action for enticing away a servant, the declarations of the latter made at the moment of departure, were received to show the actuating cause ex-

isting at the moment; and it was conceded that under proper circumstances the declarations of the wife at the time of departure would be admissible.

And in *Gilchrist vs. Bale,* 8 *Watts,* 355, declarations of the wife even made before her departure from her husband, were admitted when connected with marks of violence which she pointed out as caused by his beating her; and the Court in this case quote the language of Lord ELLENBOROUGH, in *Aveson vs. Lord Kennard,* 6 *East,* 188, where upon the argument being made that the declarations by the wife upon her elopement from her husband accusing him of misconduct, could not be given in evidence against him in an action against the adulterer, Lord ELLENBOROUGH replied: "It is not so clear that her declarations made at the time, would not be evidence under any circumstances. If she declared at the time that she fled from immediate terror of personal violence from her husband, I should admit the evidence, though not, if it were a collateral declaration of some matter which happened at another time."

In this case the declaration was directly connected with the act. The wife was in the act of moving away from her home, and was actually upon the journey, having only stopped for the night. The State's witness had testified to unwillingness, coercion, terror, distress and tears. This proposed evidence was directly in conflict with such a state of things. If she were in distress and terror, signs of it would have been manifest and she would have been unlikely to make the alleged declarations; for the prisoner was away, and she could appeal for protection—and if true to her husband would necessarily have done so.

The motive of her declaration whether made under coercion or otherwise might have been tested by the cross-examination of the witness, as to whether she was free from terror and distress, or still under its effects, and show-

ing signs of nervous trepidation. The offer was to show declarations apparently freely and voluntarily made, and the weight to be given to them was a matter for the jury, under all the facts and circumstances of the case. The witness who had testified for the defendant placed the prisoner in the attitude of a mere agent for the wife, without any privity with, or knowledge of her purpose or design to separate from her husband, and to remove the children from his control; and if that was true the prisoner could not be guilty of forcibly abducting or of enticing away the children; and had the right to confirm this version of the occurrence by the important corroborating testimony which he proposed to offer; and which, as a part of the *res gestæ*, and as characterizing and explaining the transaction, we think he clearly had a right to present to the jury, to have such weight as they might think proper to give to it.

*Ruling reversed, and*
*new trial awarded.*

[Decided 30th June, 1881.]

MILLER and IRVING, J., dissented.